Milord A. Keshishian, SBN 197835
milord@milordlaw.com
Shannon Skrzynski, SBN 358342
shannon@milordlaw.com
MILORD LAW GROUP, P.C.
333 S. Hope Street, Suite 4025
Los Angeles, California 90071
Tel: (310) 226-7878

Cameron S. Reuber (*Pro Hac Vice* pending)
reuber@leasonellis.com
Lauren B. Emerson (*Pro Hac Vice* pending)
emerson@leasonellis.com
Tatsuya Adachi (*Pro Hac Vice* pending)
adachi@leasonellis.com
LEASON ELLIS LLP
One North Lexington Avenue, Suite 1200
White Plains, NY 10601
Tel: (914) 288-0022

Attorneys for Plaintiff GHOST L.L.C.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GHOST L.L.C., a Nevada limited liability company;<br><br>      Plaintiff,<br><br>   v.<br><br>ANAND NALLA, d/b/a JOHN DOE ENTITY GHOST GOLF,<br><br>      Defendants. | CASE NO.:  8:25-cv-02023<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:<br><br>1.  Trademark Infringement, 15 U.S.C. § 1114<br>2.  False Designation of Origin, 15 U.S.C. § 1125<br>3.  Unfair Competition, Cal. Bus. & Prof. Code § 17200<br>4.  Common Law Unfair Competition<br>5.  Common Law Trademark Infringement<br><br>JURY TRIAL DEMANDED |

Plaintiff Ghost L.L.C. ("Plaintiff" or "Ghost"), having its principal place of business at 400 N. State Street, Suite 420, Chicago, Illinois 60654, through its undersigned counsel, brings this action against Defendant Anand Nalla, having an address of 145 Terrapin, Irvine, California 92618, and Defendant John Doe Entity d/b/a Ghost Golf, and alleges as follows.

## NATURE OF THE ACTION

1.    This is a civil action for damages and injunctive relief for: willful trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*; unlawful, unfair, and fraudulent business acts under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; and unfair competition under California common law.

## PARTIES

2.    Plaintiff Ghost is a Nevada limited liability company with its principal place of business at 400 N. State Street, Suite 420, Chicago, Illinois 60654.

3.    Defendant Anand Nalla ("Nalla") is an individual who, on information and belief, is a citizen and resident of California having an address of 145 Terrapin, Irvine, California 92618.  On information and belief, Defendant Nalla does business as Ghost Golf.

4.    On information and belief, Defendant John Doe Entity d/b/a Ghost Golf (the "Doe Defendant") is a business entity having a principal place of business in California. On information and belief, the Doe Defendant is a citizen of California: if in the case of a corporation, by virtue of it being incorporated in California and having its principal place of business in California; or if in the case of a limited liability company, by virtue of at least one member, namely, Defendant Nalla, being a citizen of California.  Plaintiff's pre-suit investigation has not revealed the true identity of the Doe Defendant.  Plaintiff reserves the right to amend its Complaint to conform with information produced in fact discovery as to the true identity of the Doe Defendant.

5.    As alleged above, on information and belief, both defendants in this case do

business as Ghost Golf.  On information and belief, both defendants do so collectively and in concert with one another.  This allegation is supported by further allegations below.  Accordingly, both defendants may be referred to hereinafter collectively as "Defendants" or "Ghost Golf."

**JURISDICTION AND VENUE**

6.    This Court has subject matter jurisdiction over Counts I and II of this action, asserted under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

7.    This Court has subject matter jurisdiction over the Counts III, IV, and V of this action, each asserted under California law, under 28 U.S.C. § 1367(a) because they are so related to Counts I and II, which are claims within the original jurisdiction of this Court under the trademark and unfair competition laws of the United States, that they form part of the same case or controversy.

8.    This Court has personal jurisdiction over Defendant Nalla as a citizen of California.

9.    This Court has personal jurisdiction over the Doe Defendant because, on information and belief, it is a citizen of California, as alleged above.

10.    In the unlikely event the Doe Defendant is not a citizen of California as alleged above, the Court alternatively has personal jurisdiction over the Doe Defendant because the claims asserted against the Doe Defendant arise from its joint operation of the Ghost Golf business with Defendant Nalla, who is a citizen of California, and Defendants' acts alleged below are believed to have occurred substantially within the Central District of California.

11.    Venue is proper under 28 U.S.C. § 1391(b)(1) because one or more defendants in this case resides in this District.

12.    Venue is also proper under 28 U.S.C. § 1391(b)(2) because it is in the judicial district in which a substantial part of the events or omissions giving rise to Plaintiff's claim occurred.

## FACTS

**Plaintiff's Ghost® brand and registered trademarks**

13. Founded in 2015, Plaintiff Ghost is a highly and globally recognizable sports, lifestyle, and nutrition brand. Ghost's brand focuses on an overall healthy lifestyle with an emphasis on fitness, personal training, and supporting a gym routine with sports nutrition products.

14. Ghost owns exclusive trademark rights in the trademark GHOST and variations thereof (the "Ghost Marks"), including, but not limited to, the following trademark registrations issued by the U.S. Patent and Trademark Office ("USPTO"):

| U.S. Reg. No. | Mark | Int'l Class; Identification |
|---|---|---|
| 4,905,591 (the "'591 Registration") | GHOST | Class 005: Dietary and nutritional supplements |
| 4,999,968 (the "'968 Registration") | GHOST LEGEND | Class 005: Dietary and nutritional supplements |
| 5,051,066 (the "'066 Registration") | GHOST LIFESTYLE | Class 025: Clothing, namely, t-shirts, shorts and pants; Hats |
| 6,057,086 (the "'086 Registration") | GHOST | Class 035: Online retail store services featuring dietary and nutritional supplements, sports drinks, energy drinks, and drinking accessories |
| 6,062,360 (the "'360 Registration") | GHOST | Class 021: Shaker bottles sold empty |

**COMPLAINT – Jury Demand**

| U.S. Reg. No. | Mark | Int'l Class; Identification |
|---|---|---|
| 6,241,769 (the "'769 Registration") | GHOST | Class 005: Dietary and nutritional supplements in powder form |
| 6,494,485 (the "'485 Registration") | GHOST | Class 032: powders used in the preparation of isotonic sports drinks and sports beverages; sports drinks; energy drinks; protein enriched sports beverages |
| 6,970,546 (the "'546 Registration") | GHOST | Class 041: providing entertainment services in the form of videos, namely, providing on-line videos featuring sports nutrition products and information about the sports nutrition and dietary supplement industries |

Ghost owns the '591, '968, and '066 Registrations by assignment from Daniel Lourenco, Ghost's CEO. Attached hereto as **Exhibit A** are true and correct copies of the certificates of registration issued by the USPTO in connection with each of the foregoing trademark registrations, as well as the assignment agreement conveying ownership of the aforementioned Ghost Marks which Ghost owns by assignment.

15.     Since its inception in 2015, Ghost has used, and advertised and sold products bearing, Plaintiff's Ghost Marks continuously and exclusively throughout the United

States and the world.  Ghost uses the Ghost Marks in connection with a broad range of goods, including, but not limited to, dietary and nutritional supplements, energy drinks, shaker bottles, apparel (including, but not limited to, t-shirts, other tops, hoodies, jackets, bottoms, and headwear), and accessories, such as travel beverage containers, scented candles, dog toys, towels, bags, and tote bags.  Below are non-exhaustive examples of goods Ghost promotes and sells under the Ghost Marks.

  

16.     The Ghost Marks are highly recognizable among the consuming public. Ghost products bearing Plaintiff's Ghost Marks are seen by over 200,000 unique viewers each month.  As of the date this action was commenced, Plaintiff's various Instagram accounts in aggregate have nearly a million (indeed approximately 932,300) followers (@ghostlifestyle – 530,000 followers; @ghostenergy – 291,000 followers; @ghosthydration – 35,100 followers; @ghostgamer – 44,600 followers; @ghostwellness – 31,600 followers); Plaintiff's Facebook accounts in aggregate have over 125,000 followers (https://www.facebook.com/ghostlifestyle/ – 109,000 followers; https://www.facebook.com/p/GHOST-Energy-100063534010597/  – 18,000 followers); Plaintiff's X (f/k/a Twitter) account (@ghostlifestyle) has over 52,300 followers; Plaintiff's TikTok accounts in aggregate have over 175,000 followers (@ghostenergy – 22,700 followers; @ghostlifestyle – 153,000 followers); and Plaintiff's YouTube channel (https://www.youtube.com/c/Ghostlifestyle) has received over 11 million views, with

over 33,000 regular subscribers.  Views of Plaintiff's video content on YouTube amount to over 100 years of total watch time.

17.    Since 2015, Plaintiff Ghost has invested substantially in promoting its products and services bearing Plaintiff's Ghost Marks through paid advertising, its website, on social media, through partnerships with influencers and brand ambassadors, and at live events throughout the United States.

18.    In particular, Ghost devotes significant resources to market products bearing Plaintiff's Ghost Marks to athletes and sports and fitness enthusiasts.

19.    Indeed, in its marketing and advertising, Plaintiff's Ghost Marks are inextricably linked to sports and fitness.  For example, since at least as early as 2016, Ghost has used the tagline BE SEEN BEYOND THE WALLS OF THE GYM™ on its website and other promotional materials.

20.    Beginning in 2015, Ghost has strengthened the public's association between Plaintiff's Ghost Marks and sports and fitness through its partnerships with celebrity fitness influencers, such as fitness model and YouTube fitness celebrity Christian Guzman, YouTube fitness celebrity Maxx Chewning, and personal trainer and fitness nutrition specialist Sydney Cummings.  Ghost has also worked with hundreds of other fitness influencers who serve as brand ambassadors for Ghost, many of whom own their own gyms where they sell or promote GHOST®-branded products.  Attached hereto as **<u>Exhibit B</u>** is a webpage from Ghost's website listing some of the influencers and brand ambassadors with whom Ghost currently works to promote products and services under the Ghost Marks, currently totaling 68 in number.  Ghost refers to these influencers and brand ambassadors collectively as the "GHOST® Fam."

21.    Ghost also currently has partnerships with a wide variety of professional sports organizations, including the Phoenix Suns of the National Basketball Association, the Phoenix Mercury of the Women's National Basketball Association, the Las Vegas Golden Knights of the National Hockey League, and the Philadelphia Phillies and Chicago Cubs of Major League Baseball.  The Ghost Marks are prominently featured on

the wall along the third baseline of Wrigley Field, where the Chicago Cubs play, and on the "lip" of the dugout at Citizens Bank Park, where the Philadelphia Phillies play.





22.     Ghost also has a partnership with Motiv Sports, an endurance sporting events company.

23.     The recognizability of Plaintiff's Ghost Marks goes well beyond the realm of sports and fitness.  For example, Ghost has increased its brand recognizability through partnerships and licensing deals with some of the most recognizable food and beverage brands.  In 2020, Ghost partnered with Anheuser Busch to release a GHOST®-branded energy drink that is now sold in approximately 10,000 locations in the United States as well as globally in Australia, New Zealand and throughout Europe and the United Kingdom.  Through licensing deals, Ghost has also released GHOST®-branded sports nutrition products jointly branded with other famous, household-name food and candy brands.  These licensing deals and partnerships reflect the significant brand recognizability and value of goodwill the Ghost Marks offer even to some of America's most recognizable and well-established brands.

24.     The Ghost Marks and Ghost's products bearing such marks are also highly recognizable in the live event and entertainment marketplaces.  Ghost currently has partnerships with music and entertainment festivals, such as Beyond Wonderland, Day Trip, EDC, Warped Tour, Innings, Riot Fest, Volleywood, and When We Were Young.  Attached hereto as **Exhibit C** is a copy of Ghost's "Events" webpage, which shows Ghost's 2024 and 2025 event schedules, including fitness-related events such as Fitness on the Lawn in Las Vegas, Nevada, and Summer Shredding in Houston, Texas, as well as live entertainment events, such as EDC Orlando and Life is Beautiful.

25.     Keurig Dr Pepper Inc's 2024 acquisition of a majority ownership stake in Ghost for nearly $1 billion, news of which was circulated by numerous national media publications, including the Wall Street Journal, USA Today, and Bloomberg.com, has further enhanced the recognizability of the Ghost Marks.  This acquisition reflects the tremendous value and recognizability of the Ghost Marks and brand.

26.     Plaintiff owns all rights, title, and interest in Plaintiff's Ghost Marks, which have acquired substantial goodwill and represent intellectual property of significant value

to Plaintiff. Plaintiff's Ghost Marks enable customers in this District and elsewhere to recognize, identify, and distinguish Ghost's goods and services from the goods and services of others.

27. Because of Plaintiff's extensive marketing and promotion of its goods and services under Plaintiff's Ghost Marks, consumers have come to associate Plaintiff with being the source of goods and services promoted and sold in connection with the word "GHOST." Therefore, Plaintiff's Ghost Marks serve as powerful source identifiers in the marketplace for Plaintiff's goods and services.

**Ghost Golf and the likelihood of confusion.**

28. Like Ghost, Ghost Golf is a sports and fitness brand focusing particularly on sports apparel, equipment, and accessories.

29. Ghost Golf promotes and sells its products under the marks GHOST and GHOST GOLF. Attached hereto as **Exhibit D** are true and correct copies of webpages within Ghost Golf's website, showing examples of products Ghost Golf markets and sells under the mark GHOST.

30. Below are examples of Ghost Golf's use of the mark GHOST on its products.

 

Ex. D, at 11, 14 of 15.

31. With respect to apparel and accessories in particular, the similarity between Plaintiff's and Defendant's product offerings is stark:

| **Plaintiff's product** | **Defendant's product** |
|:---:|:---:|
|  |  |
|  |  |

| **Plaintiff's product** | **Defendant's product** |
|---|---|
|  |  |
|  |  |
|  |  |

32.     As shown above, many of Defendant's products marketed and sold under the marks GHOST and GHOST GOLF are direct market substitutes of products marketed and sold by Plaintiff under the GHOST Marks.

33.    Ghost Golf's use of the mark GHOST is identical to Plaintiff's GHOST® word mark that is the subject of the '591 Registration.  It is further identical to the literal element of the design marks that are the subject of the '086, '360, '769, '485, and '546 Registrations.  It is further identical to the dominant portion of Plaintiff's GHOST LEGEND word mark that is the subject of the '098 Registration and the dominant portion of the literal element of the GHOST LIFESTYLE design mark covered by the '066 Registration.

34.    Ghost Golf's use of the mark GHOST GOLF is nearly identical to Plaintiff's GHOST® word mark that is the subject of the '591 Registration, with the only difference being Defendants' addition of the descriptive word "GOLF."  Otherwise, the dominant portion of GHOST GOLF is identical to Plaintiff's GHOST® word mark.  The dominant portion of Ghost Golf's GHOST GOLF mark is further identical to the literal element of the design marks that are the subject of the '086, '360, '769, '485, and '546 Registrations, again with the only difference being Defendants' addition of the descriptive word "GOLF."  The dominant portion of GHOST GOLF is identical to the dominant portion of Plaintiff's GHOST LEGEND word mark that is the subject of the '098 Registration and the dominant portion of the literal element of the GHOST LIFESTYLE design mark that is the subject of the '066 Registration.

35.    Given its use on sports equipment, apparel, and accessories, Ghost Golf unlawfully uses the Ghost Marks, and marks that are confusingly similar to the Ghost Marks, in connection with goods and services that are closely related to the goods and services Ghost promotes and sells under the Ghost Marks.

36.    Listed next, Ghost Golf is the owner of two pending trademark applications before the USPTO for the word mark GHOST, both of which Plaintiff has opposed in proceedings before the Trademark Trial and Appeal Board ("TTAB").

37.    Attached hereto as **Exhibit E** is a true and correct copy of an application filed on July 25, 2022, by Defendant Nalla, for the word mark GHOST, Serial No. 97,518,538**,** in connection with "[t]owels."  In this application, Defendant Nalla

represented that Ghost Golf first used the mark GHOST in commerce in connection with towels as early as September 1, 2020, well after Plaintiff commenced its use of its Ghost Marks in 2015, as alleged above.  *See* Ex. E, at 3 of 12.

38.    Attached hereto as **Exhibit F** is a true and correct copy of an application filed on July 25, 2022, by Defendant Nalla, for the word mark GHOST, Serial No. 97,518,616, in connection with "[s]ocial club services, namely, arranging, organizing, and hosting social events, get-togethers, and parties for club members."  Defendant Nalla filed this application on an intent-to-use basis, meaning Defendant Nalla had not commenced use of the mark GHOST in connection with the foregoing services as of July 25, 2022.  *See* Ex. F, at 3 of 7.

39.    Attached hereto as **Exhibit G** is a true and correct copy of Ghost Golf's webpage devoted to its online content creator marketing program, called "Ghost Golf Creator."  Through the program, "Ghost Golf is seeking golfers & talented creators to enjoy innovative & premium golf gear while spreading the word about our brand.  If selected, we offer exclusive access to campaigns, events, & select products for you to share with your family, friends, & fans."  Ex. G, at 2 of 3.

40.    Attached hereto as **Exhibit H** is a true and correct copy of Ghost Golf's webpage devoted to its "Ghost Golf Influencer Program."  As shown therein, the "[s]ocial club services" and "club members" identified in Defendant Nalla's trademark application at Serial No. 97,518,616 (Ex. F, at 2 of 7) appear to refer to Ghost Golf's influencer marketing program, as indicated by the displayed text, "Welcome to the Ghost Golf Club."



**Ghost Golf Influencer Program**

**Welcome to the Ghost Golf Club.**

If you would like to be part of this social golfing community by sharing engaging and inspiring content with your fans, friends and family please complete the below form to apply and our team will review your application.

Ex. H, at 2 of 2.

41.     As of July 25, 2022, Defendant Nalla was using the mark GHOST in commerce in connection with towels and had a *bona fide* intention to use it in connection with social club services, namely, arranging, organizing, and hosting social events, get-togethers, and parties for club members, as evidenced by the above-referenced trademark applications, in which Defendant Nalla, who is listed as the owner of the applications and the GHOST marks listed therein (Ex. E, at 2 of 12; Ex. F, at 2 of 7), declared under penalty of fine or imprisonment (Ex. E, at 6 of 12; Ex. F, at 5–6 of 7) as to such use and intent to use.  Accordingly, Plaintiff reasonably concludes that, at minimum, Defendant Nalla, individually, has done business as Ghost Golf and has used the GHOST mark in commerce and that he continues to do so as of the date of this Complaint.

42.     Ghost Golf is not believed to be the sole personal endeavor of Defendant Nalla, however, as numerous online resources identify a separate individual named Jim Jamison as being Ghost Golf's VP of Sales.  Accordingly, given Ghost Golf apparently has more than one employee, Plaintiff reasonably concludes there is also a business entity with which Defendant Nalla acts in concert with respect to the operation of Ghost Golf and the commercial use of the marks GHOST and GHOST GOLF.  That entity is currently identified as the Doe Defendant pending fact discovery.

43.     As referenced above, Plaintiff has opposed both of Defendant Nalla's applications in the TTAB.  Both opposition proceedings began in October 2023.

44.     Ghost Golf's unauthorized use of the Ghost Marks has persisted throughout the pendency of the TTAB opposition proceedings.  Accordingly, at minimum, all of Ghost Golf's uses of the Ghost Marks after the commencement of those opposition proceedings have been in willful disregard of Plaintiff's rights in the Ghost Marks.

45.     Like Plaintiff, Ghost Golf sells its sports equipment, apparel, and accessory products bearing the mark GHOST on its direct-to-consumer website, www.ghostgolf.com.

46.     Like Plaintiff, Ghost Golf promotes such products through social media advertising, including via Instagram, Facebook, Tik Tok, YouTube, and X (f/k/a Twitter),

as shown in **Exhibit I** attached hereto, which is a true and correct copy of Defendants' aforementioned social media pages.

47.    Like Plaintiff, Ghost Golf also promotes its products via social media influencer campaigns.  *See* Ex. H (Ghost Golf Influencer Program); *see also* Ex. G (Ghost Golf Creator program).

48.    Like Plaintiff, Ghost Golf markets and sells its products and services to general consumers and consumers of sports and fitness-related equipment, apparel, and accessories.

49.    On August 14, 2025, as shown below, when a consumer searched for "Ghost Golf" and "Ghost Energy" on Google, the search results page included an AI-generated summary at the top stating that the two companies "refer to different aspects of the GHOST lifestyle brand."  As the preeminent source of consumer information, Google's erroneous representation is powerful evidence that the similarity of the parties' marks has led, and will continue to lead, to confusion among the consuming public.

◆ AI Overview

"Ghost Golf" and "Ghost Energy" refer to different aspects of the GHOST lifestyle brand. Ghost Golf is a line of premium golf apparel and accessories, while Ghost Energy is a popular line of energy drinks known for their unique flavors and collaborations with brands like Sour Patch Kids and Oreo, according to Wikipedia. GHOST, the company behind these products, is partially owned by Keurig Dr Pepper and sells products in over 40 countries, according to Wikipedia. 🔗 

Ghost Golf:

- Focuses on high-quality golf gear designed for golfers, blending innovative design with premium craftsmanship, according to a job posting. 🔗
- Offers apparel like hoodies with unique designs, and accessories like magnetic golf towels, according to Australian Golf Digest. 🔗

Ghost Energy:

- A popular line of energy drinks with unique and often sweet-themed flavors, says CNN. 🔗

//

## COUNT I
### Trademark infringement
### 15 U.S.C. § 1114
### Against all Defendants

50.    Plaintiff repeats and incorporates by reference its allegations in the preceding paragraphs as if set forth fully herein.

51.    Plaintiff is the owner of the Ghost Marks, which are valid marks entitled to protection under the Lanham Act.

52.    Plaintiff's ownership of the Ghost Marks includes numerous trademark registrations set forth more fully in Paragraph 14 above, each of which is valid and subsisting.

53.    Defendants have used Plaintiff's Ghost Marks, including colorable imitations thereof, in connection with the promotion and sale of goods that are closely related to the goods Plaintiff promotes and sells under its Ghost Marks.

54.    Defendants' unauthorized use of Plaintiff's Ghost Marks is likely to mislead or deceive an appreciable number of ordinarily prudent purchasers as to the source, affiliation, or approval of Defendants' goods or services, in violation of 15 U.S.C. § 1114.

55.    Plaintiff Ghost has not authorized, licensed, or given permission for the uses of the Ghost Marks complained of herein, and instead has expressly and repeatedly informed Defendants that they have no right to use any of Plaintiff's Ghost Marks.

56.    Defendants' conduct has been intentional and willful, constituting an exceptional case pursuant to 15 U.S.C. § 1117(a).

57.    By their willful acts, Defendants have made and will continue to make profits and gains to which they are not entitled in law or equity.

58.    Plaintiff Ghost is entitled to an award of monetary damages in an amount to be determined at trial.

59.    By their actions, Defendants intend to continue to infringe the Ghost Marks unless restrained by this Court.

60.     Defendants' acts have irreparably damaged and, unless enjoined, will continue to irreparably damage Plaintiff Ghost, and Plaintiff Ghost has no adequate remedy at law.  Accordingly, Plaintiff is entitled to a permanent injunction.

61.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of this action under 15 U.S.C. §§ 1116 and 1117, together with pre-judgment and post-judgment interest.

## COUNT II
### False designation of origin
### 15 U.S.C. § 1125(a)(1)(A)
### Against all Defendants

62.     Plaintiff repeats and incorporates by reference its allegations in the preceding paragraphs as if set forth fully herein.

63.     Plaintiff is the owner of the Ghost Marks, which are valid marks entitled to protection under the Lanham Act.

64.     Defendants have used Plaintiff's Ghost Marks, including colorable imitations thereof, in connection with the promotion and sale of goods that are closely related to the goods Plaintiff promotes and sells under its Ghost Marks.

65.     As alleged above, by their unauthorized use of the Ghost Marks, Defendants' conduct has caused, is intended to cause, and is likely to continue to cause, confusion, mistake, and deception among the general consuming public as to the affiliation, connection, or association of Defendants with Plaintiff Ghost, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiff Ghost.

66.     As alleged above, Defendants' conduct constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

67.     Defendants' conduct has been intentional and willful, constituting an exceptional case pursuant to 15 U.S.C. § 1117(a).

68.     By their willful acts, Defendants have made and will continue to make

profits and gains to which they are not entitled in law or equity.

69.    Plaintiff Ghost is entitled to an award of monetary damages in an amount to be determined at trial.

70.    By their actions, Defendants intend to continue to falsely designate the origin of its goods unless restrained by this Court.

71.    By their willful acts, Defendants have made and will continue to make profits and gains to which they are not entitled in law or equity.

72.    Defendants' acts have irreparably damaged and, unless enjoined, will continue to irreparably damage Plaintiff Ghost, and Plaintiff Ghost has no adequate remedy at law.  Accordingly, Plaintiff is entitled to a permanent injunction.

73.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of this action under 15 U.S.C. §§ 1116 and 1117, together with pre-judgment and post-judgment interest.

### COUNT III
**Unlawful, unfair, and fraudulent business acts**
**California UCL, Cal. Bus. & Prof. Code § 17200, *et seq.***
**Against all Defendants**

74.    Plaintiff repeats and incorporates by reference its allegations in the preceding paragraphs as if set forth fully herein.

75.    Defendants' acts of unfair competition and deception as alleged above are likely to deceive the reasonable consumer to whom such practice has been, and will be in the future, directed.

76.    Defendants' acts of unfair competition and deception constitute unlawful, unfair, and fraudulent business acts under Cal. Bus. & Prof. Code § 17200, *et seq.*

77.    By their actions, Defendants intend to continue to unfairly compete with Plaintiff Ghost unless restrained by this Court.

78.    By their willful acts, Defendants have made and will continue to make profits and gains to which they are not entitled in law or equity.

79.    Defendants' acts have irreparably damaged and, unless enjoined, will continue to irreparably damage Plaintiff Ghost, and Plaintiff Ghost has no adequate remedy at law.  Accordingly, Plaintiff is entitled to a permanent injunction.

**COUNT IV**
**Unfair competition**
**California common law**
**Against all Defendants**

80.    Plaintiff repeats and incorporates by reference its allegations in the preceding paragraphs as if set forth fully herein.

81.    Defendants' acts of unfair competition and deception as alleged above are likely to deceive the reasonable consumer to whom such practice has been, and will be in the future, directed.

82.    As alleged above, Defendants' conduct constitutes a violation of Plaintiff's rights under California common law.

83.    By their actions, Defendants intend to continue to unfairly compete with Plaintiff Ghost unless restrained by this Court.

84.    By their willful acts, Defendants have made and will continue to make profits and gains to which they are not entitled in law or equity.

85.    Defendants' acts have irreparably damaged and, unless enjoined, will continue to irreparably damage Plaintiff Ghost, and Plaintiff Ghost has no adequate remedy at law.  Accordingly, Plaintiff is entitled to a permanent injunction.

86.    In addition, Plaintiff Ghost is entitled to an award of monetary damages in an amount to be determined at trial.

**COUNT V**
**Trademark infringement**
**California common law**
**Against all Defendants**

87.    Plaintiff repeats and incorporates by reference its allegations in the preceding paragraphs as if set forth fully herein.

88.    As alleged above, Defendants' conduct constitutes a violation of Plaintiff's rights under California common law.

**COMPLAINT – Jury Demand**

89.     By reason of the Defendants' actions alleged herein, Plaintiff Ghost has suffered, and will continue to suffer, irreparable injury to its rights and suffer substantial loss of goodwill, reputation, and in the value of the Ghost Marks, unless and until the Defendants are enjoined from continuing their wrongful acts.

90.     By reason of the Defendants' actions alleged herein, Plaintiff Ghost is entitled to monetary damages in an amount not presently ascertained.

91.     Such damage will continue and increase unless and until the Defendants are enjoined from continuing their wrongful acts.  Accordingly, Plaintiff Ghost is entitled to a permanent injunction.

92.     Defendants' conduct in this cause of action is willful, wanton, malicious, oppressive, and in conscious disregard of Plaintiff Ghost's rights in its Ghost Marks, justifying the imposition of punitive and exemplary damages under California Civil Code § 3294.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     For an order that Defendants' use of Plaintiff's Ghost Marks constitutes a willful violation of 15 U.S.C. § 1114, 15 U.S.C. § 1125(a)(1)(A), Cal. Bus. & Prof. Code § 17200, *et seq.*, and California common law;

2.     For an order that Defendants and any of their members, officers, principals, shareholders, agents, servants, employees, attorneys, successors, and assigns; their respective divisions, such divisions' respective members, officers, principals, shareholders, agents, servants, employees, attorneys, successors, and assigns; and those in privity with or in active concert or participation with any of them who receive actual notice of the judgment by personal service or otherwise, to permanently cease all acts constituting a violation of 15 U.S.C. § 1114, 15 U.S.C. § 1125(a)(1)(A), Cal. Bus. & Prof. Code § 17200, *et seq.*, and California common law;

3.     For an order that Defendants are precluded from applying to register any trademark or trade dress that incorporates Plaintiff's Ghost Marks or any trademark

confusingly similar thereto and/or be directed by this Court to surrender for cancellation any registration granted to either Defendant pursuant to 15 U.S.C. § 1057(e) or, in the alterative, that the Court direct the U.S. Patent and Trademark Office to cancel such registration(s) pursuant to 15 U.S.C. § 1119;

4.    For an order directing that Defendants deliver to Plaintiff for destruction all infringing promotional materials and related advertisements, labels, signs, prints, packages, wrappers, and receptacles in their possession or under their control bearing names or marks identical or similar to any of Plaintiff's Ghost Marks or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof pursuant to 15 U.S.C. § 1118;

5.    For an order directing Defendants to file with this Court and serve on Plaintiff within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

6.    For an order directing Defendants to account to Plaintiff for any and all profits derived by them by reason of Defendants' acts complained of herein;

7.    For an order that Defendants' acts complained of herein are willful, and that this is an exceptional case pursuant to 15 U.S.C. § 1117(a).

8.    For an order awarding Plaintiff monetary damages according to proof at trial;

9.    For an order awarding Plaintiff treble damages pursuant to 15 U.S.C. § 1117(a);

10.    For an order awarding Plaintiff its costs, attorneys' fees, and expenses in this suit under 15 U.S.C. § 1117;

11.    For an order awarding Plaintiff all interest as allowed by law;

12.    For an order that the Court shall retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any

such order, for the enforcement and compliance therewith, and for the punishment of any violations thereof; and

13. For an order awarding Plaintiff any other relief that the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury for all claims for relief herein and all issues so triable.

Dated: September 8, 2025                    Respectfully submitted,

**MILORD LAW GROUP, P.C.**
**LEASON ELLIS LLP**

/s/ Milord A. Keshishian
Milord A. Keshishian
Shannon Skrzynski
Cameron S. Reuber
Lauren B. Emerson
Tatsuya Adachi

Attorneys for Plaintiff
Ghost L.L.C.

**COMPLAINT – Jury Demand**